IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 24-CR-219** |
| **v.** | : | **18 U.S.C. § 111(a)(1)** |
| **DONALD LEE MOSS,** | : | |
| **Defendant.** | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Donald Lee Moss, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building

and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***The Defendant's Participation in the January 6, 2021, Capitol Riot***

8. At approximately 2:00 p.m. on January 6, 2021, a group of Washington D.C. Metropolitan Police ("MPD") officers, wearing riot gear, walked toward the Lower West Terrace

of the United States Capitol Building. Angry and violent rioters descended on, and surrounded, the officers and began shouting obscenities and curses at them. The surrounded officers repeatedly issued commands to "move back." They also began to move rioters away from their position with their hands and batons. At approximately 2:01 p.m., MOSS advanced toward the MPD officers with his friend, James Link Behymer. MPD Officer J. L. extended his hand toward BEHYMER and said, "Sir, step back for your own safety." Other officers directed MOSS and BEHYMER to move back, but MOSS did not. At the same time, MOSS pointed towards the U.S. Capitol Building and shouted, "This is our fucking house!"

9. A few seconds later, Officer J. L. extended his hand, attempting to keep BEHYMER back. MOSS then forcefully shoved Officer J. L.'s hand off BEHYMER. *Exhibit 1*, a screenshot from Officer J. L.'s body-worn camera, shows MOSS shoving Officer J. L.'s hand off of BEYHMER with MOSS's hand circled in red.



*Exhibit 1*

10. After MOSS shoved Officer J. L.'s arm, MOSS shouted, "Get your fucking hand off of him!" and "Keep your fucking hand off of him!" MOSS held up his arm with a closed fist in a threatening manner. *See Exhibit 2*.



*Exhibit 2*

11. During Moss's assault on Officer J. L., the mob was surrounding the MPD officers. The mob constricted the officers' movements and pushed into them. Some members of the mob threw objects, to include a traffic cone, at the officers. Amidst the chaos, rioters screamed: "Fuck You! Fucking Nazis!", "Go back to the Gestapo training camp!", "You're the traitors!", and "You wanna take us all on?!" *Exhibit 3*, a screenshot from a third-party video, shows this confrontation. MOSS and BEHYMER are circled in yellow and blue, respectively.



*Exhibit 3*

12. Shortly after striking Officer J. L.'s arm, MOSS leaned in and forcefully pushed another MPD officer from behind. *See Exhibit 4* (screenshot from a third-party video).



*Exhibit 4*

13. After MOSS forcibly assaulted and opposed officers on the Lower West Terrace, at approximately 2:13 p.m., MOSS entered the U.S. Capitol Building through the Senate Wing doors. *See Exhibit 5*, MOSS circled in green.



*Exhibit 5*

14. At about 2:21 p.m., MOSS stood at a shattered window and waved other rioters toward the U.S. Capitol Building. MOSS encouraged other rioters to enter the building. *See Exhibit 6*, MOSS circled in red.



*Exhibit 6*

15. At approximately 2:31 p.m., MOSS carried a chair across the Crypt Lobby and placed it directly in the path of the retractable ceiling door, which would prevent the door from closing. *See Exhibit* 7, MOSS circled in red. Immediately before MOSS moved the chair into the door's path, police were attempting to close off the area by closing the retractable doors.



*Exhibit 7*

16. At approximately 2:41 p.m., MOSS exited the southernmost window near the Senate Wing Doors. He was one of the last rioters to be cleared by police from the area. *See Exhibit 8*, MOSS circled in red.



*Exhibit 8*

17. At approximately 2:50 p.m., MOSS re-entered the U.S. Capitol Building through the Senate Wing Doors along with rioters who broke through a barricade set up by Capitol Police. *See Exhibit 9*, MOSS circled in red.



*Exhibit 9*

18. MOSS returned to the Crypt, took pictures, and stole a sign that another rioter had left behind. He exited the Capitol for the final time with this sign at approximately 3:34 p.m., one hour and twenty-one minutes after first entering. *See Exhibit 10*, MOSS circled in red.



*Exhibit 10*

### Elements of the Offense

19. The parties agree that Assaulting, Resisting, or Impeding Officers in violation of 18 U.S.C. § 111(a)(1) (Count Two) requires the following elements:

a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer J. L., an officer from the Metropolitan Police Department;

b. Second, the defendant did such acts forcibly;

c. Third, the defendant did such acts voluntarily and intentionally;

d. Fourth, Officer J. L. was assisting officers of the United States who were then engaged in the performance of their official duties; and

e. Fifth, the defendant made physical contact with Officer J. L. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the violation of 18 U.S.C. § 231(a)(3) charged in Count One.

### *Defendant's Acknowledgments*

20. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly, voluntarily, and intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with MPD Officer J. L. on the Upper Terrace, and that, at the time, Officer J. L. was engaged in the lawful performance of his official duties and was assisting officers of the United States who were then engaged in the performance of their official duties. The defendant further admits that he made physical contact with Officer J. L. and acted with the intent to commit another felony, specifically, an act of civil disorder, as charged in Count One of the indictment in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _s/ Tighe R. Beach_
Tighe R. Beach
Assistant United States Attorney
CO Bar No. 55328
U.S. Attorney's Office
District of Columbia
Telephone No: (202) 809-2058
Email Address: tighe.beach@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Donald Lee Moss, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/25/2024

Donald Lee Moss
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/25/2024

Thomas R. Healy
Attorney for Defendant